AO 91 (Rev. 11/11) Criminal Complaint     AUSA Saqib Mohammad Hussain (312) 353-1414

**FILED**
6/24/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

UNITED STATES OF AMERICA

v.

ERIK OCAMPO

CASE NUMBER: 25 CR 331

**UNDER SEAL**

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about April 1, 2025, at Chicago, Illinois, in the Northern District of Illinois, Eastern Division, the defendant violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, 922(o) | knowingly possessed a machinegun, as that term is defined in Title 26, United States Code, Section 5845, in violation of Title 18, United States Code, Section 922(o)(1) |

This criminal complaint is based upon these facts:

  X   Continued on the attached sheet.

*Jeffery T. Van Der Mark*
JEFFERY T. VAN DER MARK
Special Agent, Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF)

Pursuant to Fed. R. Crim. P. 4.1, this Complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the Complaint and Affidavit by telephone.

Date: June 24, 2025

*Maria Valdez*
*Judge's signature*

City and state: Chicago, Illinois     MARIA VALDEZ, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

**AFFIDAVIT**

I, JEFFERY T. VAN DER MARK, being duly sworn, state as follows:

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF), and have been so employed since May 2024. My current responsibilities include the investigation of federal firearms offenses, including the unlawful possession of firearms or ammunition by convicted felons, firearms trafficking, and violent crime.

2. Prior to becoming a Special Agent, in approximately September 2016, I joined the Detroit Police Department as an officer and later joined the Grosse Pointe Farms Department of Public Safety in approximately June of 2018, resulting in eight years of law enforcement experience. I have gained experience in federal firearms and narcotics investigations and have been involved with various electronic surveillance methods. I have also participated in investigations that have led to the issuance of search and arrest warrants involving violations of narcotics and firearms laws.

3. This affidavit is submitted in support of a criminal complaint alleging that Erik OCAMPO has violated Title 18, United States Code, Section 922(o). Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging OCAMPO with possession of a machinegun, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to

establish probable cause to believe that the defendant committed the offense alleged in the complaint.

4. This affidavit is based on my personal knowledge, my training and experience, my review of audio and audio-video recorded conversations, law enforcement records and reports, court documents, as well as other information provided to me by other law enforcement agents and confidential sources.

A. Summary

5. On April 1, 2025, OCAMPO sold multiple firearms, a machinegun conversion device (MCD), and cocaine to an individual who, unbeknownst to OCAMPO, was an undercover ATF agent (UCO-1). Prior to the April 1 sale, OCAMPO explained to UCO-1 that an MCD converts a pistol into a fully automatic weapon, and during the April 1 sale, OCAMPO demonstrated how the MCD attaches to one of the pistols he sold UCO-1.[1]

6. Based on my training and experience, I know that a machine gun conversion device (MCD) attached to the rear slide of a Glock pistol is sometimes referred to as a "switch" or a "button." An MCD can convert a semi-automatic firearm into a fully automatic firearm, allowing the firearm to fire more than one round of ammunition with a single pull of the trigger.

---

[1] In addition to the April 1 sale, between March 19, 2025, and June 3, 2025, OCAMPO coordinated and completed approximately six other sales of multiple firearms to UCO-1.

**B.     Facts Supporting Probable Cause**

7.     On March 19, 2025, OCAMPO sold UCO-1 three AR-style pistols and one AR-style short-barrel rifle. OCAMPO arranged for the sale using his phone (Subject Phone 1) and directed Individual B to deliver the firearms and accept payment on OCAMPO's behalf.[2]

8.     The following day, March 20, 2025, UCO-1 had a consensually recorded conversation with OCAMPO, who was using Subject Phone 1. UCO-1 told OCAMPO that he was interested in purchasing Glocks.[3] OCAMPO responded, "We can make that happen boss." UCO-1 then asked OCAMPO if UCO-1 could purchase "switches." OCAMPO responded, "Like how many you guys trying to get?" UCO-1 asked to purchase four "G's" [Glock pistols] and four "switches."

9.     During the same recorded conversation on March 20, UCO-1 then asked OCAMPO what a "switch" was. OCAMPO responded that "it's a button you put on

---

[2] This affidavit refers to OCAMPO as the identified user of Subject Phone 1 based upon (1) a comparison of his voice on Subject Phone 1 to OCAMPO's voice during the audio-video recorded in-person controlled purchases with UCO-1, and (2) the March 19, 2025, and April 1, 2025 sale described in this Affidavit, occurred as was discussed with the user of Subject Phone 1.

[3] Certain conversations referenced in this affidavit have been recorded and preserved. This affidavit does not notate every communication between OCAMPO and the ATF Undercover Officer ("UCO-1"). Instead, the conversations are summaries of the communication. Where recorded conversations are discussed in this affidavit, the language that is quoted from the recorded conversations is based upon a preliminary review of the recorded conversations and not on final transcripts of the recorded conversations. Summaries and excerpts do not include all statements or topics covered during the course of the conversations. At various points in the affidavit, I have also included, either in brackets or summary form, my interpretation of words and phrases used in conversations. My interpretations are based on the contents and context of the conversations, events occurring before and after the conversations, my knowledge of the investigation as a whole, my experience and training, and the experience and training of other law enforcement agents in this investigation.

2

the back of a Glock bro, and it goes fully automatic." OCAMPO explained further, "Yeah it's like a whole assault rifle bro on a Glock."

10. Based on my training and experience and the training and experience of other law enforcement officers familiar with illegal firearms trafficking, I believe that when OCAMPO stated that a "button" placed on the back of a Glock makes it "fully automatic" and "like a whole assault rifle" he meant that an MCD-enabled Glock becomes a fully automatic weapon capable of firing multiple rounds with a single function of the trigger.

  **C. April 1, 2025: OCAMPO Sold an MCD, Three Firearms, and Cocaine to UCO-1 and Demonstrated How to Attach the MCD to One of the Firearms.**

11. On April 1, 2025, UCO-1 conducted a controlled purchase of an MCD, and three firearms and one ounce of suspected cocaine from OCAMPO.

12. UCO-1 and OCAMPO negotiated the deal over the phone beginning in late March 2025. As part of those negotiations, on March 26, 2025, OCAMPO, using Subject Phone 1, texted the following terms of the gun and drug deal to UCO-1: "We looking at 9,600 for the 4Ars. 2gs [Glock switch-equipped firearms] 3k and jale 900." Based on my training and experience, I believe that "jale" is Spanish street slang for cocaine and that this text message meant that OCAMPO offered to sell 4 assault rifle-style firearms for $9,600, two Glock pistols with MCDs for $3,000, and $900 of cocaine.

13. On March 30, 2025, OCAMPO, using Subject Phone 1, changed the terms of the deal, texting to UCO-1 the following, "Yo bro u coming tmrw." "I sold the

2

2 gs [Glock switches]. And 1 Ar I needed the mony to get more jale. I only got 3 Ars and the jale g. Let me know if u still want the 3 Ars and jale g." Additionally, OCAMPO texted "Yo I got one switch but for $450." OCAMPO also sent a photograph of the "switch" for sale, which is depicted below.



14. Based on my training and experience, I believe that this text message meant that OCAMPO sold one of the four assault-rifle style firearms he initially offered for sale, and two of the three Glock pistols with the MCDs, and therefore, changed the terms of UCO-1's offer to include the sale of three assault rifle style firearms and one MCD.

15. UCO-1 replied to OCAMPO, "Throw it on a g [Glock pistol] fr [for] me n i give you 1.1." OCAMPO responded, "Igy [I got you] u want the Glock 30 I'll put on that one." Based on my training and experience and the training and experience of other officers, I believe UCO-1 asked OCAMPO to sell UCO-1 an MCD-fitted Glock pistol for $1,100 in addition to the assault rifles, and OCAMPO agreed to put a switch on the Glock pistol.

16. On March 31, 2025, UCO-1 reconfirmed the terms of the deal, texted OCAMPO on Subject Phone 1, "3 Ar G wit switch n ammo and the ounce of jale." OCAMPO replied on Subject Phone 1, "Aight cool." UCO-1 and OCAMPO agreed to meet on April 1, 2025, to conduct the sale. UCO-1 texted OCAMPO the meeting location, which was an ATF controlled location in Chicago.

17. On or about April 1, 2025, OCAMPO arrived at the ATF controlled location to complete the sale of firearms and narcotics agreed upon with UCO-1.

18. At the controlled location, OCAMPO met with UCO-1 and sold UCO-1 three assault rifle style firearms, one Glock 30 .45 caliber pistol bearing serial number AHEP353, a "switch" style MCD, and two ounces of suspected cocaine[4] in exchange for $5,900 in cash from UCO-1.

19. According to UCO-1's report and a review of the audio-video recording of OCAMPO's sale of the firearms and MCD to UCO-1 at the ATF controlled location, during the purchase, UCO-1 asked OCAMPO if OCAMPO knew how to install the MCD on the Glock pistol that OCAMPO was selling to UCO-1. In response, OCAMPO retrieved the MCD and Glock pistol from the bag he had handed to UCO-1 and demonstrated how the MCD fit onto the back of the Glock pistol by manipulating the Glock pistol and MCD in his hands and attaching the MCD to the back of the Glock pistol.

---

[4] The white powder sold by OCAMPO and represented to be "jale" field tested positive as cocaine and weighed approximately 132.2 grams. The powder was later submitted to a DEA laboratory where, in summary, it tested positive as cocaine.

20. A photograph of the items OCAMPO sold to the UCO-1 on April 1, 2025 is depicted below.



21. According to a report issued by the ATF Firearms and Ammunition Technology Division (FATD) the Glock switch sold by OCAMPO on April 1, when installed on a Glock pistol, caused that pistol to fire multiple rounds automatically by a single function of the trigger. The Glock switch was therefore determined to be a combination of parts designed and intended for use in converting a weapon into a machinegun—i.e., a "machinegun" as defined in 26 U.S.C. § 5845(a)(6).

D. **CONCLUSION**

22. Based on the foregoing facts, I respectfully submit that there is probable cause to believe that, on or about April 1, 2025, at Chicago, in the Northern District

of Illinois, Eastern Division, ERIK OCAMPO, knowingly possessed a machinegun, as that term is defined in Title 26, United States Code, Section 5845, in violation of Title 18, United States Code, Section 922(o)(1) .

                                                                        FURTHER AFFIANT SAYETH NOT.

*Jeffery T. Van Der Mark*
JEFFERY T. VAN DER MARK
Special Agent, Bureau of Alcohol, Tobacco, Firearms & Explosives

SWORN TO AND AFFIRMED by telephone on June 24, 2025.

*Maria Valdez*
Honorable MARIA VALDEZ
United States Magistrate Judge

2